**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

CALVIN LAMAR MIDDLETON,        :
AIS 201915,

        :

       Petitioner,

        :

vs.                              CA 08-0330-WS-C

        :

GRANTT CULLIVER,

        :

       Respondent.


**<u>REPORT AND RECOMMENDATION</u>**

This cause is back before the Court on Calvin Lamar Middleton's petition for federal habeas corpus relief, filed pursuant to 28 U.S.C. § 2254, following vacation and remand by a panel of the Eleventh Circuit Court of Appeals (Doc. 36, UNPUBLISHED OPINION, at 2 ("[W]e vacate the judgment of the district court and remand for further consideration. We do so without implying any view on how the tolling issue should be decided on remand.")). This matter has been referred to the undersigned for the entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Because the undersigned finds that the one-year limitations period should be equitably tolled in this case, a recommendation cannot be made that the instant petition be dismissed as time barred

under the Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision contained in 28 U.S.C. § 2244(d). Instead, the undersigned finds that this Court is procedurally barred from reaching the merits of several of petitioner's claims[1] and, as to the remaining claims, finds that petitioner's rights were not violated in this cause and his request for habeas corpus relief should be denied.

## **FINDINGS OF FACT**

1.     Middleton was convicted in the Circuit Court of Conecuh County, Alabama on November 18, 1998 of the capital murder of three individuals. (*See* Doc. 11, at 2) On December 1, 1998, petitioner was sentenced to three consecutive terms of life imprisonment without the possibility of parole. (*See* Doc. 11, Exhibit C, at 1) Middleton's convictions and sentences were affirmed on appeal by memorandum decision entered on November 19, 1999.

---

[1]     Middleton raises the following claims which he contends entitle him to relief: (1) he was denied his Sixth Amendment right to an impartial jury because the prosecution used 12 of its 17 peremptory challenges to strike African-Americans from his petit jury; (2) he was deprived of his right to a fair trial because his arrest was based on a complaint and warrant not supported by probable cause; (3) the state failed to prove each element of the charged offenses beyond a reasonable doubt; (4) he was denied a fundamentally fair trial because the trial court denied his motion in limine/motion to exclude his statement; (5) he was denied a fundamentally fair trial based upon the trial court's failure to control prejudicial publicity; (6) his trial attorney was ineffective in failing to move to quash the indictment based on racial discrimination in the selection of the grand jury foreperson in Conecuh County, Alabama; (7) his trial attorney was ineffective in failing to make a timely *Batson* objection; (8) his trial attorney was ineffective in failing to timely challenge his arrest; (9) his trial attorney was ineffective in failing to challenge and move to quash the indictment; (10) his trial attorney was ineffective in failing to object to the State's introduction of the transcript of his statement/confession; (11) his trial attorney was ineffective in failing to move to suppress his statement/confession; (12) his appellate attorney was ineffective in failing to challenge trial counsel's deficiencies in a motion for new trial; and (13) the State withheld exculpatory evidence, specifically witness statements containing information that someone other than he was involved in the crimes.

*See Middleton v. State*, 796 So.2d 455 (Ala.Crim.App. 1999) (table).

## I.

The appellant contends that the state improperly struck African-American prospective jurors solely on the basis of their race in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Specifically, he argues that the trial court erred in permitting the state to use 12 of its 17 strikes to remove African-American prospective jurors.

Even Batson objections must be properly preserved by appropriate and timely objections before an appellate court will review the action. A Batson objection must be made prior to the swearing of the jury. Because the appellant has raised this issue for the first time on appeal, the issue is not preserved.

Moreover, even if this issue was preserved, we find nothing in the record which indicates that the state improperly struck African-Americans on the basis of their race. It is important that the defendant come forward with facts, not just numbers alone, when asking the trial court to find a prima facie case of racial discrimination. Given that, in his brief, the only basis of the appellant's argument was that the state used 12 of its 17 strikes to remove African-Americans, the trial court did not err in permitting the state to strike the prospective jurors.

## II.

The appellant contends that there was insufficient probable cause for the arrest warrant, his subsequent arrest, and the indictment. Specifically, he argues that the police officer who obtained the arrest warrant did not have personal knowledge of the facts. Additionally, he argues that the aggravating circumstances were not stated in the indictment.

Our review of the record indicates that the appellant did not preserve the issue concerning the arrest warrant and his subsequent arrest for review. Review on appeal is limited to review of questions properly and timely raised at trial. A general objection and the lack of any adverse ruling by the trial court fails to preserve an issue for appellate review. In this case, the

defense filed a motion to dismiss the charges stating that probable cause was not established for his arrest. The record does not indicate that a motion hearing was conducted or that the trial court ruled on the motion. Furthermore, the appellant did not raise this issue during trial. Although the appellant stated in his motion for new trial that the arrest warrant and the arrest of the appellant was without probable cause, the issue was not timely raised to the trial court. Moreover, the appellant did not specifically state to the trial court that the warrant and arrest lacked probable cause because the police officer did not have personal knowledge of the facts. Thus, the appellant's contention concerning the arrest warrant and his arrest was not preserved.

Moreover, even if the issue was preserved, we find his argument is without merit. In Jones v. State, 719 So.2d 249 (Ala.Cr.App. 1996), this Court stated:

> A finding of probable cause may be based completely on hearsay evidence, provided there is a substantial basis for believing the evidence under the totality of the circumstances. An issuing judge's determination that sufficient probable cause existed to support the warrant is entitled to great deference and is conclusive in the absence of arbitrariness. We must determine whether the issuing judge had a substantial basis for concluding that probable cause existed.

An affidavit need not reflect the direct personal observations of the affiant and may be based on hearsay. Thus, the appellant may not argue that probable cause to issue and execute the arrest warrant was not established on the basis that the police officer who obtained the warrant did not have personal knowledge of the facts.

Additionally, our review of the record indicates that the appellant's argument that the aggravating circumstances were not stated in the indictment is raised for the first time on appeal. Thus, this issue was not preserved. Moreover, the aggravating circumstances that may lead to the death penalty in a capital case are not elements of the offense and are not required to be set forth in the indictment. Thus, the trial court did not err in omitting the aggravating circumstances in the indictment.

## III.

The appellant contends that Count I of the indictment failed to inform him of the offense charged. Specifically, the appellant argues that "[n]owhere in the indictment or in the statute is the element of murder or theft <u>by another</u> a requirement." Additionally, the appellant argues that, during the Grand Jury proceedings, the state did have "verifiable knowledge" that the appellant committed each murder during a robbery.

Our review of the record indicates this issue is not preserved. As previously stated, a general objection and the lack of any adverse ruling by the trial court fails to preserve an issue for appellate review. Although the appellant raised a general objection to the indictment in his motion to dismiss, the record does not indicate that the trial court ruled on the motion. Thus, the appellant's contentions are not preserved

Moreover, in <u>Price v. State</u>, 725 So.2d 1003 (Ala.Cr.App. 1997), this Court stated:

> A conviction of one charged in the indictment with having been the actual perpetrator of the crime is authorized on proof of a conspiracy or that the accused aided and abetted in the commission of the crime. An aider and abetter would be indicted directly with the commission of the substantive crime and the charge may be supported by proof that he only aided and abetted in its commission.

Thus, the omission of "the element of murder or theft <u>by another</u>" did not create an insufficient indictment.

We note that although the appellant contends that the state did not have "verifiable knowledge" that he committed the charged offenses, his allegation is not supported by the evidence. Because his contention appears to be a bare allegation, his argument is without merit.

## IV. & V.

The appellant maintains that Counts II and III of the indictment did not follow the language of the statutes. Specifically, he argues that Counts II and III of the indictment stated that he intentionally caused the death of the victims, whereas § 13A-5-40(a)(10) & (15), Ala. Code 1975, state that murder of the victims is a capital offense. Additionally, the appellant maintains that each count in the indictment failed to allege mental culpability.

Our review of the record indicates this issue is not preserved. As previously stated, a general objection and the lack of any adverse ruling by the trial court fails to preserve an issue for appellate review.

Moreover, § 13A-5-40(b), Ala. Code 1975, states, in pertinent part, that "the terms 'murder' and 'murder by the defendant' as used in [§ 13A-5-40] to define capital offenses mean murder as defined in Section 13A-6-2(a)(1)." Section 13A-6-2(a)(1), Ala. Code 1975 states that "[a] person commits the crime of murder if . . . [w]ith <u>intent to cause the death</u> of another person, he causes the death of that person or of another person." Counts II and III used words equivalent to the statutory definition of murder to describe the offenses. Thus, the indictment sufficiently apprised the appellant of the charged offenses.

Furthermore, our review of the record indicates that all of the required elements of mental culpability were contained in each count of the indictment. Thus, the appellant's allegation is without merit.

In addition, the appellant appears to contend that the wording of the indictment was confusing and led the jury to believe that he was guilty. We note that, after reading the indictment to the jury, the trial court instructed that the indictment was not evidence against the appellant, and that the jury should presume that the appellant is innocent until proven guilty. Thus, the appellant may not argue that the reading of the indictment caused the jury to assume his guilt.

VI.

The appellant maintains that there was a fatal variance between the proof at trial and each count in the indictment.

Although the appellant states in his motion for new trial and in his brief that there was a fatal variance, he does not indicate a specific variance. Moreover, as discussed in parts VIII and IX of this opinion, the evidence was sufficient to convict the appellant of each of the charged offenses. Thus, the appellant's contention is without merit.

## VII.

The appellant contends that the indictment is void or voidable because, he claims, that each count in the indictment failed to state an offense.

As previously stated in parts II, III, IV, and V, the appellant did not timely raise any issues concerning the wording of the indictment. Furthermore, as previously addressed, each count in the indictment sufficiently apprised the appellant of the charged offenses. Thus, the indictment is neither void nor voidable.

## VIII & IX

The appellant contends that the state failed to establish a prima facie case of capital murder during a robbery, capital murder wherein two or more persons are murdered, and capital murder of a child less than fourteen years of age.

Section 13A-5-40(a)(10), Ala. Code 1975, states that "[m]urder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct" is a capital offense. Section 13A-5-40(a), Ala. Code 1975, states that the murder of a victim who is less than fourteen years of age is a capital offense.

Section 13A-5-40(a)(2), Ala. Code 1975, states that "[m]urder by the defendant during a robbery in the first degree or an attempt thereof committed by the appellant" is a capital offense. Section 13A-5-40(c), Code of Alabama 1975, provides, in pertinent part, "A defendant who does not personally commit the act of killing which constitutes the murder is not guilty of a capital offense. . . unless that defendant is legally accountable for

the murder because of complicity in the murder itself."

> To sustain a conviction under § 13A-5-40(a)(2) for capital murder-robbery, the State must prove beyond a reasonable doubt: (1) a robbery in the first degree or an attempt thereof, as defined by § 13A-8-41, (2) a murder as defined by § 13A-6-2(a)(1), and (3) that the murder was committed during the robbery or attempted robbery, i.e. that the murder was committed in the course of or in connection with the commission of, or in immediate flight from the commission of the robbery or attempted robbery in the first degree.

Section 13A-2-23, Code of Alabama 1975, defines "complicity" as follows:

> A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:

> (1)     He procures, induces or causes such person to commit the offense; or

> (2)     He aids or abets such other person in committing the offense; or

> (3)     Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make.

The participation in a crime and the community of purpose of the perpetrators need not be proved by direct or positive testimony, but may be inferred from circumstantial evidence. Aid and abet comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary. A non-triggerman can be convicted of a capital offense if he was a knowing accomplice to the intentional killing itself. Additionally, the question of a defendant's intent at the time of the commission of the crime is usually an issue for the jury to resolve.

In deciding whether the state presented sufficient evidence to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. We must accept as true evidence introduced by the prosecution, make all legitimate inferences from that evidence, and consider that evidence in the light most favorable to the prosecution. It is not the province of this Court to reweigh the evidence. Conflicting evidence presents a jury issue. This Court will not substitute its judgment for that of the jury as to the sufficiency of the evidence to sustain a conviction. Circumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused.

The state's evidence established the following. Rodney Brooks, the appellant's cousin, testified that around 6:00 p.m. on November 20, 1996, the appellant and Ethan Dorsey picked him up from a friend's house. Brooks stated that Dorsey drove to his house, and that Dorsey and the appellant went inside the house. Brooks waited in the rear passenger's seat of the car. According to Brooks, the appellant and Dorsey returned to the car with a black bag containing a sawed-off shotgun and a .32 or .38 caliber pistol. Brooks testified that the appellant and Dorsey told him that they were going to rob a store in Brooklyn, Alabama. Brooks stated that he told them that he did not want to go with them, and Dorsey drove him home.

Wayne Stewart, district commander of the Alabama Bureau of Investigations, testified that on February 5, 1997, he tape-recorded a statement made by the appellant. On the tape-recording, the appellant stated that Dorsey drove him to a small grocery store in Brooklyn. The appellant further stated that he and Dorsey put on hooded sweatshirts and gloves. According to the appellant, he held a sawed-off shotgun and Dorsey held a pistol, and they walked into the store. The appellant stated that he pointed the shotgun at Richard Cary, told Richard to walk away from the counter, and made him walk outside. Additionally, the appellant stated that, after he told Richard to lay down on the ground, Richard grabbed the gun and the gun fired. The appellant stated that Dorsey told him that, when he heard gunfire outside, he shot Scott Williams and Timothy Bryan Crane inside the store. The appellant further stated that Dorsey used a gun he found behind the counter and his own pistol during the shooting. According to the appellant, he and Dorsey ran to the car, and Dorsey told him that he only

took approximately $200. The appellant stated that they drove to a nearby road and tossed the bag containing the gums, hooded sweatshirts, and gloves out the window.

Brad Cary, Richard Cary's son, testified that his father's house was located approximately 50 yards from his house. Brad Cary stated that he heard gunshots around 8:00 p.m. Brad Cary further stated that he found the victims and telephoned 911. According to Brad Cary, his father kept a pistol and shotgun underneath the cash register, and that he did not see the pistol in the store after the incident occurred. Nancy Findley, an employee of the grocery store, testified that she left the store around 7:15 p.m., and that there was approximately $300 in the cash register. Brad Cary testified that there was no money in the cash register after the incident occurred.

Brooks testified that, around 11:00 p.m., he saw the appellant and Dorsey at a local nightclub. Brooks stated that the appellant told him that he and Dorsey killed some people during the robbery. Brooks further stated that the appellant told him that Dorsey shot a child and a man inside the store. During the appellant's tape-recorded interview, he stated that Dorsey used some of the money to purchase cocaine at the nightclub.

Dr. Leroy Riddick, a forensic pathologist, testified that Richard Cary died from a gunshot wound to the arm and chest, Williams died from a gunshot wound which entered head and passed through several organs, and Timothy Bryan Crane died from a gunshot wound to the back of his head. Sarah Crane testified that her son, Timothy Bryan Crane, was thirteen years' old.

When viewing the evidence in the light most favorable to the state, we find that the state established a prima facie case of capital murder committed during a robbery, capital murder of a child less than fourteen, and capital murder of two or more persons. In this case, Brooks testified that shortly before the incident occurred, the appellant and Dorsey told him that they were going to rob the grocery store. Brooks further testified that the appellant and Dorsey put a bag filled with a pistol and a sawed-off into their car. Moreover, the appellant admitted in his statement to Stewart that he and Dorsey put on hooded sweatshirts and gloves and that he walked into the store holding a sawed-off shotgun. The appellant stated that he

pointed the shotgun at the owner, Richard Cary, and forced him to walk outside. According to the appellant, Richard Cary grabbed for the shotgun and the gun fired. Additionally, the appellant stated that Dorsey took money and a pistol from the store, and shot Williams and Crane. Thus, the evidence is sufficient to establish that the appellant was a knowing accomplice to the robbery of the grocery store and to the intentional killing of Williams and Crane. Furthermore, the evidence is sufficient to establish that the appellant intentionally shot and killed Richard Cary during the course of the robbery. Thus, the trial court did not err in determining that the state established a prima facie case.

## X.

The appellant maintained that the prosecutor "effectuated a lack of objectivity in the jury's evaluation of the facts" during the opening argument.

Specifically, he argues that the prosecutor misrepresented the facts by stating that Count I of the indictment "alleges that he committed that murder while in the course of committing a robbery of Cary's store and a robbery of Richard Cary." He further argues that the prosecutor should have stated the exact language of the indictment which patterned § 13A-5-40(a)(2), Ala. Code 1975.

Our review of the record indicates this issue is not preserved. Review on appeal is restricted to questions and issues properly and timely raised at trial. A motion for new trial or a motion for a judgment of acquittal is not sufficient to preserve the issue where no timely objection was made at the time the evidence was offered and admitted. Because the defense did not object during the opening statement, this issue is not preserved.

Moreover, as we previously addressed in Part[s] IV & V of this memorandum opinion, the trial court read the indictment to the jury and instructed that the indictment was not evidence against the appellant, and that the jury should presume that the appellant is innocent until proven guilty. Additionally, we noted in Part[s] IV & V that, as long as the meaning is not substantially changed, there is no need to track the exact language of a statute. Furthermore, the trial court instructed the jury that the

lawyers' argument is not evidence. Thus, the prosecutor did not improperly comment during his opening argument.

XI.

The appellant contends that the trial court erred in denying his motion to suppress his confession. Specifically, he argues that his statement was not voluntarily made, because, he says, the police offered him an inducement to make the statement.

Our review of the record indicates that the appellant did not preserve this issue for review. Defense counsel made a motion to suppress evidence that the appellant and the state reached an agreement that the state would not ask for the death penalty if the appellant agreed to provide information concerning the offense. Objections must be stated with sufficient particularity to apprise the trial court of the basis of the objection so as to permit the trial court to make an informed decision on the particular issue involved. The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial. Because the defense did not specifically object to the introduction of the statement at trial, the issue is not preserved.

A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error proceedings in a trial court that were invited by him or were a natural consequence of his own actions.

Moreover, it has long been the law that a confession is prima facie involuntary and inadmissible, and that before a confession may be admitted into evidence, the burden is upon the State to establish voluntariness and a <u>Miranda</u> predicate. A two-pronged test is used to determine whether an accused's statement is admissible. First, the trial court must determine whether the accused was informed of his <u>Miranda</u> rights. Second, the trial court must determine whether the accused voluntarily and knowingly waived his <u>Miranda</u> rights before making his statement.

During a hearing outside the presence of the jury, defense counsel stated the following:

"[W]e're not going to stand up here, not I, and say that the
statement he gave to law enforcement, that I participated in
with him, was not voluntarily given because I went over his
rights with him before he gave the statement, and it was
shortly after he was arrested. I think it was on February the
5th is when we did it. I'm not going to contest that because it
would turn me into a witness, number one, and number two,
it's not true. So . . . I think that after consulting with my
client, I would expect that we would stipulate that it can come
in without the necessary predicate being laid in open court.
We will agree that it can come in, that it was voluntary and
[]in[] accordance with his constitutional rights. We just don't
want for the District Attorney to place before the jury the
terms of the settlement because we don't think it's relevant in
the guilt phase of these proceedings."

In this case, because the defense stipulated that the statement was
voluntarily made, the trial court did not err in admitting the statement into
evidence. Moreover, given that the appellant stipulated at trial that the
statement was voluntary, the appellant may not now claim on appeal that his
statement was involuntary.

## XII.

The appellant contends that the trial court erred in denying his
motion to control prejudicial publicity.

In Anderson v. State, 542 So.2d 292[, 306] (Ala.Cr.App. 1987), this
Court stated:

A defendant is entitled to a panel of impartial jurors;
however, in order to be qualified, the jurors need not be
totally ignorant of the facts and issues involved. Except where
inherently prejudicial publicity has so saturated the
community as to have a probable impact upon the prospective
jurors, the trial court's main responsibility with regard to
allegedly prejudicial pre-trial publicity is to determine
whether, as the result of such publicity, it is reasonably

unlikely that the defendant can secure a fair and impartial trial.

In this case, there is no evidence that the appellant was prejudiced by any publicity. Our review of the record indicates that, during voir dire, the jurors were asked whether they knew anything about the case which would influence their verdict and whether anyone had heard about the case through the news. Only one prospective juror, Juror C.A., stated that he had heard about some of the facts of the case through the news, but that he did not learn of anything which would cause him to pre-judge the case. Given that the appellant did not establish that there was a danger that the jurors' impartiality would be destroyed by the news media, the trial court did not err in denying the motion to control publicity.

### XIII.

The appellant appears to argue that, after the trial court instructed the jury, the trial court should have given him "adequate time to reflect on the instructions submitted by the trial court and the prosecution," and should have permitted him time to submit his own instructions supplementing the trial court's instructions.

Our review of the record indicates that the appellant did not object concerning this issue at trial. It is axiomatic that only matters that are timely raised in the trial court and that receive adverse rulings are preserved for appellate review. Thus, the appellant's argument is not preserved.

Additionally, we note that, after reading the instructions to the jury, the trial court asked the defense if it had any objections. The defense objected to certain parts of the trial court's instructions. Thus, the trial court gave the appellant adequate time to reflect on the instructions and to state any requested supplemental instructions.

Accordingly, the judgment of the trial court is affirmed.

(Doc. 11, Exhibit C, at 1-10 (most internal citations, quotation marks, ellipses and

brackets omitted; footnote omitted)) Petitioner's application for rehearing was denied on

December 17, 1999 (Doc. 1, at 3). Middleton did not petition the Alabama Supreme Court for certiorari review. (*See* Doc. 11, at 11) The certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on January 7, 2000. (Doc. 14, Exhibit N, Alabama Court of Criminal Appeals Docket Sheet)

2.      While Middleton alleges in his complaint that on February 27, 2001 he filed a Rule 32 petition in the Circuit Court of Conecuh County, Alabama, collaterally attacking his convictions and sentences (Doc. 1, at 4), documentation received from the respondent establishes that the state collateral petition was actually filed on March 14, 2002 (*see* Doc. 11, Exhibit D, PETITION FOR RELIEF FROM CONVICTION OR SENTENCE, at 7 (reflecting a mailing date of March 14, 2001); *but cf. id.* at 8 (petitioner's verification was sworn to prison official on February 27, 2001))[2] Middleton's Rule 32 petition was denied on

---

[2]      In his attachment to his Rule 32 petition, Middleton raised the following claims: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) newly discovered evidence existed establishing that the prosecution failed to turn over exculpatory evidence from two witnesses, Keith Jenkins and Stephen Townsend. (Doc. 11, Exhibit D, ATTACHMENT TO PETITION FOR POST CONVICTION RELIEF PURSUANT TO RULE 32 ALABAMA RULES OF CRIMINAL PROCEDURE, at 2) According to Middleton, his trial attorney: (1) failed to move to quash the indictment based upon racial discrimination in the selection of the Grand Jury foreperson in Conecuh County, Alabama; (2) failed to make a timely *Batson* objection; (3) failed to timely challenge his arrest; (4) failed to move to quash the indictment on the bases that it omitted essential elements and failed to charge an offense; and (5) failed to object to the State's introduction of the transcription of his confession. Middleton contends that his attorney on direct appeal was deficient in failing to include in his motion for new trial all of the foregoing instances of ineffective assistance of trial counsel.

August 13, 2003, some ten months following an evidentiary hearing.[3] (*See* Doc. 11, Exhibit

D, DENIAL OF RULE 32 PETITION)

        Petitioner asserts three claims. An evidentiary hearing was held on November 7, 2002. The first claim is ineffective assistance of counsel at trial.

        a.      Petitioner claims that trial counsel should have moved to quash

---

[3]      The evidentiary hearing was conducted on November 7, 2002. (Doc. 11, Exhibit E, Evidentiary Hearing Transcript, at 4) The trial court took judicial notice of the fact that his court records, since he took office in 1989, would reflect that roughly half of all Grand Jury forepersons in Conecuh County, Alabama were African-American. (*See id*. at 4-7) In addition, the trial court found, on the representation of the prosecutor, that the foreperson of Middleton's grand jury, Margaret Williams, was African-American. (*Id*. at 5 & 6)

Middleton testified that he was pressured into making a statement thereby rendering same involuntary. (*Id*. at 8) Although he initially and emphatically stated that he was not advised of his *Miranda* rights before giving his statement to the police (*id.*), he later admitted that his attorney advised him of his constitutional rights (*id*. at 13; *compare id. with* Tr. 19 (testimony of petitioner's trial attorney that he advised Middleton of his constitutional rights)). While petitioner did have a short window within which to decide whether he would make a statement to police about the triple murder in Brooklyn in exchange for the state's agreement to take the death penalty off the table (*see id*. at 17-24), he admitted during the Rule 32 hearing that he took the deal offered (*id*. at 14) and that the statement he gave to officers was a true statement (*id*. at 15). In addition, it is clear from the evidentiary hearing testimony of Middleton's trial attorney that Middleton's statement was consistent with his testimony in the trial of Ethan Eugene Dorsey (*id*. at 21), Middleton's "partner in crime."

With respect to the alleged exculpatory evidence, Middleton testified that he had learned through a third party that Keith Jenkins and Stephen (or Stephanie) Townsend were paid for statements used against him at trial. (*Id*. at 10)

As for the prosecutor's peremptory challenges, Middleton's trial attorney testified that the strikes made by the prosecutor "were strikes that met the requirements of *Batson v. Kentucky*." (*Id*. at 25)

Incredibly, upon recall to the witness stand, Middleton took the position that he "got a raw deal[]" (*id*. at 29) because he did not "intentionally" kill with a shotgun one of the three individuals killed during the course of the admitted robbery of a store in Brooklyn, Alabama which he and Dorsey targeted (*see id*. at 30).

the indictment as a result of discrimination in the selection of [] Grand Jury Foremen. The evidence showed that approximately equal numbers of African-American[s] and Caucasians have served as Grand Jury Forepersons. Petitioner failed to prove any discrimination.

b.      Petitioner claims that trial counsel should have made a Batson motion. His counsel testified that such was considered but there were no tenable grounds to make the motion. The Court finds this testimony convincing.

c.      Petitioner claims that counsel failed to challenge the arrest. Petitioner failed to show the arrest was improper.

d.      Petitioner claims that counsel failed to challenge the indictment. The indictment is not void.

e.      Petitioner claims that trial counsel failed to object to the transcript of the defendant's statement and the tape of it being placed into evidence before the jury. The use of the transcript and tape were done as a result of a plea agreement between the Defendant and the State regarding the testimony of the Petitioner against a co-defendant Eugene Dorsey. Counsel could not ethically have done otherwise and was not ineffective for carrying out the agreement as made.

The second claim is ineffective assistance of counsel on appeal. Petitioner alleges that appellate counsel should have raised each of the deficiencies claimed above. As this court finds that none of the above claims have merit, appellate counsel was not ineffective for failing to raise them.

The third claim is newly discovered evidence of innocence. Petitioner testified at this Rule 32 proceeding that all of the statements he made at trial were true. These statements show he was guilty. Therefore he was not innocent.

(Doc. 11, Exhibit E, August 19, 2003 DENIAL OF RULE 32 PETITION)

3.      Because Middleton was not informed of the trial court's disposition of his first

Rule 32 petition until after the time for appeal had expired, he filed another Rule 32 petition in the Circuit Court of Conecuh County, Alabama on January 9, 2004. (Doc. 11, Exhibit E, PETITION FOR RELIEF FROM CONVICTION OR SENTENCE (petition was docketed on January 15, 2004)) In his brief in support of this petition, Middleton made clear that he was seeking an out-of-time appeal with respect to the grounds raised in his first Rule 32 petition. (Doc. 11, Exhibit E, GROUNDS OF THE PETITION) Middleton twice filed mandamus petitions in the Alabama Court of Criminal Appeals regarding this issue; however, both petitions were dismissed. (Doc. 11, Exhibit F (on May 19, 2005, the appellate court dismissed Middleton's petition for writ of mandamus); Doc. 11, Exhibit I (almost one year later, on May 15, 2006, a subsequent petition for writ of mandamus filed by Middleton was dismissed))

4.	On June 29, 2006, Circuit Judge Sam Welch granted Middleton's request for an out of time appeal. (Doc. 11, Exhibit E, June 29, 2006 ORDER ("Court finds that Todd Watson did on 8-25-2003 send a letter & copy of the 8-19-2003 denial to the Petitioner. However, [because] Petitioner may not have received same, out of time appeal is allowed.")) However, the Alabama Court of Criminal Appeals dismissed Middleton's appeal by order dated August 18, 2006. (Doc. 11, Exhibit E, August 8, 2006 ORDER ("[T]he proper method of seeking an out-of-time appeal from the denial of a Rule 32 petition is by filing another Rule 32 petition.")) Middleton sought to reinstate his appeal, correctly pointing out to Alabama's criminal appellate court that he had, in fact, sought an out-of-time appeal in a subsequently-filed Rule 32 petition. (Doc. 11, Exhibit E, Motion to Re-instate Appeal) In addition, on September 5, 2006, Middleton filed in the Circuit Court of Conecuh County, Alabama a motion to correct judgment and order. (Doc. 11, Exhibit E, MOTION TO CORRECT JUDGMENT AND ORDER) The trial court granted this motion by endorsement on January 9, 2007, noting that he had specifically granted a "Rule 32 to allow an out of time appeal." (*Id*.) However, the Alabama Court of Criminal Appeals once again (on August 16, 2007) set aside the trial court's allowance of an out-of-time appeal and dismissed Middleton's appeal, this time on the following basis: "The Alabama Supreme Court in Marshall v. State, 884 So.2d 900 (Ala. 2003), held that the only remedy available for seeking an out-of-time appeal from the denial of a Rule 32 petition is to file a petition for a writ of

mandamus in this Court. Therefore, the circuit judge had no jurisdiction to grant an out-of-time appeal in this case." (Doc. 11, Exhibit L) Middleton's petition for rehearing was denied on August 31, 2007 (Doc. 11, at 5) and his petition for writ of certiorari to the Alabama Supreme Court was denied on October 26, 2007 (Doc. 11, Exhibit M).

5.      On June 12, 2008, Middleton filed the instant petition in this Court attacking his convictions and sentences. (*Compare* Doc. 1, at 1 (date-stamped June 12, 2008) *with id.* at 13 (reflecting a date of November 21, 2007)[4])

6.      On September 17, 2008, the undersigned entered an order that petitioner show cause, on or before October 16, 2008, why his petition should not be dismissed on the basis that it is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A). (Doc. 12) At petitioner's request (Doc. 15), this period was extended first to November 6, 2008 (Doc. 16) and on later request (*see* Doc. 17) to November 28, 2008 (Doc. 18). On December 5, 2008, petitioner finally filed his response to this Court's show cause order. (Doc. 20) Based upon this filing, the undersigned, on December 9, 2008, withdrew the report and recommendation entered on December 3, 2008 (*compare* Doc. 21 *with* Doc. 19).

7.      On December 10, 2008, the undersigned recommended that Middleton's petition be dismissed as time-barred. (Doc. 22) This report and recommendation was adopted

---

[4]      While Middleton may have signed his petition seeking habeas corpus relief on November 21, 2007, there is absolutely no indication anywhere on the face of the petition that he gave this document to prison officials for mailing on that date.

as the opinion of the Court (Doc. 27) over the objection of the petitioner (*see* Doc. 26). Petitioner's motion for leave to appeal *in forma pauperis* and motion for certificate of appealability were denied by this Court. (*See* Docs. 30 & 32) As heretofore indicated, a panel of the Eleventh Circuit Court of Appeals vacated and remanded this cause to this Court by unpublished memorandum opinion dated August 19, 2010. (*See* Doc. 36)

8.      On September 22, 2010, the undersigned ordered the parties to supply this Court with admissible evidence, whether in the form of affidavits, letters, or other communications, directed to both prongs of the equitable tolling standard. (*See* Doc. 37) The respondent was unable to provide this Court with any useful information (*see* Doc. 38); however, petitioner did provide this Court with numerous letters which reflect that he inquired of his appellate attorney on numerous occasions regarding the status of his appeal (Doc. 40, Attached Letters).

## **CONCLUSIONS OF LAW**

A.      **Statute of Limitations**.

1.      The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of limitations within which state prisoners must file their habeas corpus petitions pursuant to 28 U.S.C. § 2254. *Wilcox v. Florida Dept. of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998).

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)

2.     Subsections (B), (C), and (D) of § 2244(d)(1) clearly do not apply to petitioner's case and therefore, the timeliness of Middleton's petition must be calculated under § 2244(d)(1)(A) based upon the date on which his conviction became final. "For prisoners whose convictions became final prior to the effective date of the AEDPA, the one-year statute of limitations instituted by the AEDPA began to run on its effective date, i.e.,

April 24, 1996." *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). This rule from *Guenther* is not applicable in this case since Middleton's convictions became final in 2000.

3.      Section 2244(d)(1)(A) specifically provides that the one-year limitations period will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" On direct appeal, the Alabama Court of Criminal Appeals affirmed Middleton's convictions and sentences on November 19, 1999 and denied his application for rehearing on December 17, 1999. Middleton did not seek certiorari review in the Alabama Supreme Court.[5] The Alabama Court of Criminal Appeals issued a certificate of judgment of final affirmance on January 7, 2000 (Doc. 14, Exhibit N); therefore, Middleton's convictions became final on that date. *Brown v. Hooks*, 176 Fed. Appx. 949, 951 (11th Cir. 2006) ("On March 23, 2001, the Alabama Court of Criminal Appeals affirmed his conviction. Brown did not petition for *certiorari* review in the Alabama Supreme Court, and his conviction became final on April 10, 2001, when the Certificate of

---

[5]      Middleton's failure to seek certiorari review by the Alabama Supreme Court prevented the court of last resort in Alabama from considering his direct appeal; therefore, the Supreme Court of the United States would not have been able to consider petitioner's case on direct review. *See Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) ("The Supreme Court of the United States may grant a writ of certiorari to review the final judgment of 'the highest court of a State in which a decision could be had.' . . . A defendant has 90 days from the judgment of the state court of last resort to file a petition for a writ of certiorari in the Supreme Court of the United States. . . . In the absence of a clear statutory or constitutional bar to higher state court review . . . the Supreme Court requires petitioners to seek review in the state's highest court before filing a petition for writ of certiorari.").

Judgment issued."); *see also* Ala.R.Crim.P. 41(a) ("The certificate of judgment of the court shall issue 18 days after the entry of judgment" unless a timely application for rehearing is filed.); s*ee Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002) ("Bridges pled guilty to terroristic threats, aggravated assault and stalking charges, and was sentenced to 26 years' imprisonment on November 12, 1996. He did not appeal his convictions and sentences, but he did request that his sentence be reviewed by a sentence review panel, pursuant to O.C.G.A. § 17-10-6. . . . As provided in 28 U.S.C. § 2244(d)(1)(A), his judgment became final on the date that the time for seeking direct review expired; this date was not affected by his application for sentence review, because an application for sentence review is not a part of the direct appeal process under Georgia law. . . . Accordingly, Bridges' judgment of conviction became final on December 21, 1996, the date on which his 30-day right to appeal the November 21, 1996 judgment expired."); *Tinker v. Moore*, 255 F.3d 1331, 1332 & 1333 (11th Cir. 2001) ("Tinker was convicted on the robbery charge, and on January 29, 1997, the Third District Court of Appeal affirmed his conviction. . . . The mandate issued on February 14, 1997. . . . Under Florida law, a judgment against a criminal defendant becomes final upon issuance of the mandate on his direct appeal. . . . Tinker's mandate issued on February 14, 1997, and thus he had until February 13, 1998, to file his § 2254 petition, absent tolling of the limitations period."), *cert. denied*, 534 U.S. 1144, 122 S.Ct. 1101, 151 L.Ed.2d 997 (2002).[6]

---

[6]     This Court recognizes that AEDPA's one-year statute of limitations "allows a

4.      Middleton's one-year period of limitations under AEDPA began to run on January 7, 2000 and expired on January 8, 2001. Middleton is unable to take advantage of the tolling provision built into § 2244(d), 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."); *Guenther, supra*, 173 F.3d at 1331 ("'The time during which

---

prisoner the time to seek direct review in the Supreme Court of the United States." *Pugh, supra*, 465 F.3d at 1299; *see also Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) ("Appellant was entitled to file a petition for writ of certiorari in the United States Supreme Court within 90 days of the entry of the judgment against him by the Florida Supreme Court. Sup.Ct.R. 13.1. The statute of limitations under 28 U.S.C. § 2244(d) should not have begun to run until this 90-day window had expired. Appellant's state judgment became final on December 13, 1996, when the Florida Supreme Court denied Appellant's motion for a rehearing. The statute of limitations should have begun to run, therefore, on March 17, 1997."). However, in those instances, as here, where a petitioner is not entitled to seek review in the Supreme Court of the United States, he is not entitled to the benefit of the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court, Sup. Ct. R. 13.1 ("Unless otherwise provided by law, a petition for writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after the entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."); 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where . . . any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."). *See Pugh,* 465 F.3d at 1299-1300. As previously established, Middleton did not seek direct review of his convictions and sentences in the state court of last resort, that is, the Alabama Supreme Court; therefore, he was not entitled to seek direct review in the United States Supreme Court. *See id*. Middleton's convictions became final when the certificate of judgment issued from the Alabama Court of Criminal Appeals on January 7, 2000, *Brown, supra,* and this Court need not add to that final judgment date the 90 days contemplated in Supreme Court Rule 13.1, *compare Pugh,* 465 F.3d at 1299-1300 *with Tinker, supra,* 255 F.3d at 1332 & 1333.

a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation in [subsection (d)].'"); *cf. Coates v. Byrd*, 211 F.3d 1225, 1227 (11th Cir. 2000) ("We agree with the Tenth and Fifth Circuits that the time during which a petition for writ of certiorari is pending, or could have been filed, following the denial of collateral relief in the state courts, is not to be subtracted from the running of time for 28 U.S.C. § 2244(d)(1) statute of limitations purposes."), *cert. denied*, 531 U.S. 1166, 121 S.Ct. 1129, 148 L.Ed.2d 995 (2001), because the first collateral attack on his convictions and sentences which he undertook on March 14, 2001 (or February 27, 2001) was filed after the one-year statute of limitations expired under § 2244(d)(1).[7] *Cf. Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir.) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period."), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000). "A state court filing after the federal habeas filing deadline does not revive it." *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) (citation omitted). Accordingly, the only way this Court can proceed further is if petitioner is entitled to equitable tolling of the statute of limitations.

5. The parties have made their equitable tolling submissions as requested by the Court. In *Holland v. Florida*, 560 U.S. __, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010),

---

[7] Middleton's first Rule 32 attack was filed some two months after the one-year

the Supreme Court specifically held, for the first time, that "§ 2244(d) is subject to equitable tolling in appropriate cases[,]" id. at __, 130 S.Ct. at 2560, and reiterated "that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at __, 130 S.Ct. at 2562. For its part, the Eleventh Circuit has long embraced the doctrine of equitable tolling with regard to the one-year limitations period at issue: "Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary for the Dept. of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) (citation omitted). Thus, the one-year limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances" beyond petitioner's control made it impossible for him to file his petition on time. *See Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998)

---

statute of limitations expired.

("[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient."); *Calderon v. United States District Court for the Central District of California*, 128 F.3d 1283, 1288 (9th Cir. 1997) ("Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."), *cert. denied*, 522 U.S. 1099, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998) and *cert. denied sub nom. Beeler v. Calderon*, 523 U.S. 1061, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998). The Supreme Court in *Holland* indicated that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence[,]" *id.* at __, 130 S.Ct. at 2565, and gave the following guidance with respect to "extraordinary circumstances":

> We have previously held that "a garden variety claim of excusable neglect," such as a simple "miscalculation" that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. But the case before us does not involve, and we are not considering, a "garden variety claim" of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct. And, as we have said, although the circumstances of a case must be "extraordinary" before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case.

The record facts that we have set forth in Part I of this opinion suggest that this case may well be an "extraordinary" instance in which petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect." To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired-two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Id.* at __, 130 S.Ct. at 2564.

6.      In this case, while petitioner has not established that the instant habeas corpus petition was timely filed,[8] he has established that extraordinary circumstances and due diligence counsel equitable tolling of the limitations period. *See Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'"). Petitioner makes no argument that he was ignorant of the one-year limitations period. Instead, he argues that he is entitled to equitable tolling "because the Alabama Court of Appeals or his attorney on direct appeal fail[ed] to notify petitioner that an application for rehearing was denied and that Petition[er] had the

---

[8]      Petitioner admits that the instant habeas corpus petition was untimely filed by

right to seek further review of his conviction by writ of certiorari to the Alabama Supreme Court and the United States Supreme Court." (*See, e.g.,* Doc. 20, at 6) According to petitioner, he was not informed until sometime in December of 2000 (by his mother) that the Alabama Court of Criminal Appeals had denied his petition for rehearing. (*Id*.) Given the respondent's inability to provide any evidence regarding when petitioner was informed by either the appellate court or his appellate attorney about the denial of the request for rehearing and the issuance of the final judgment of affirmance, when combined with Middleton's numerous letters to counsel seeking information on the status of his direct appeal, the undersigned finds that both extraordinary circumstance and petitioner's due diligence counsel equitable tolling of the one-year limitations period until petitioner completed his collateral attacks on his convictions and sentences. Thus, the instant petition has been timely filed.

### B. **Procedural Default Doctrine**.

7.      In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id*. at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id*. at 729,

---

some two and one-half months. (Doc. 20, at 6)

111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id*. at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

8. The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id*.

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine

the State's interest in enforcing its laws.

*Id*. at 730-731, 111 S.Ct. at 2554.

9.     An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default.  *Id*. at 731, 111 S.Ct. at 2554.  The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.  (citations omitted)  This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.
>
> .     .     .
>
> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him.  (citations omitted)  In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.  The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id*. at 731, 732, 111 S.Ct. at 2554-2555, 2555.

10.     In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when

32

the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id*. at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). In all other cases, the presumption is not applicable. *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts. *Id*. at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). Moreover, the presumption "looks through" unexplained orders to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*, 501 U.S., at 740, 111 S.Ct., at 2559, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594. Also, the presumption "may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue." *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

11. When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id*. at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. (citation omitted). Objective factors that constitute cause include "'interference by officials'" that makes

compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." (citation omitted). In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." (citation omitted). Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. (citation omitted). Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains." (citation omitted).

Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice. (citation omitted).

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

12.     In his answer, respondent asserts that claims one through five raised by Middleton in the instant petition are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("[I]n order to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state.") due to petitioner's failure to exhaust those claims in the Supreme Court of Alabama (*see* Doc. 11, at 12-13). It is also the respondent's position that this Court is procedurally barred from reaching the merits of claims 6 through 13 because Middleton failed to file a petition for writ of mandamus in the Alabama Court of Criminal Appeals in order to obtain an out-of-time appeal of the denial of his Rule 32 petition. (*See id*. at 13-14)

13.    This Court cannot find that it is unable to consider the merits of grounds one through five of the petition on the basis that Middleton failed to exhaust those claims in the Alabama Supreme Court in accordance with *O'Sullivan v. Boerckel, supra,* in light of Middleton's consistent position that he was never informed by his appellate attorney regarding the status of his appeal.[9] Nevertheless, the undersigned does find that this Court is procedurally barred from reaching the merits of claims one, two and four of the petition in light of the fact that the Alabama Court of Criminal Appeals found, as to each of these claims, that Middleton had failed to preserve them for appellate review. (*Compare* Doc. 1, at 14-15 & 16-18 *with* Doc. 11, Exhibit C, at 1-3 & 8-9)

14.    Turning to the issue of cause and prejudice, petitioner's position on cause for any procedural default is clear given that he claims trial counsel provided ineffective assistance in failing to: (1) make a timely *Batson* objection; (2) make a timely challenge that his arrest was without probable cause; and (3) move to suppress his statement. (*See* Doc. 1, at 20-21 & 22-23) As set forward *infra,* the trial court correctly determined that counsel did not provide ineffective assistance as claimed by petitioner and, therefore, the undersigned finds that Middleton has not established cause for the default of the foregoing underlying issues. Moreover, petitioner cannot establish prejudice because the Alabama Court of Criminal

---

[9]    Moreover, the undersigned cannot agree with respondent that this Court is procedurally barred from reaching the merits of claims 6 through 13 based upon the reason proffered by respondent since Middleton did file several petitions for writ of mandamus in the Alabama Court of Criminal Appeals seeking an out-of-time appeal.

Appeals alternatively addressed the merits of each of these claims and found adversely to petitioner. Accordingly, petitioner has established neither prong of the cause and prejudice standard with respect to these three claims.

15. The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the *Murray v. Carrier* standard. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Middleton to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S. at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id*. at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Middleton has not come forward with any evidence which establishes his actual innocence and thereby undermines his capital murder convictions. Petitioner's guilt, as opposed to innocence, of these three charges is confirmed not only by his statement introduced at trial but, as well, by his Rule 32 evidentiary hearing testimony.

Accordingly, this is not one of those rare cases in which the actual innocence

exception is applicable.

**C.  Merits Discussion of Remaining Claims**.

16.    Middleton filed his petition for habeas corpus relief in this Court on or about June 12, 2008, and therefore, his case clearly is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000); *Bottoson  v. Moore*, 234 F.3d 526, 530 (11th Cir. 2000), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001).  As amended, § 2254 now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[10]

---

[10]    Based upon the facts as found by the Alabama courts in their decisions, it is clear that no argument can be made that the decisions of any of those courts was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts. More to the point, since this Court must presume as correct the determinations of all factual issues made by the Alabama courts, petitioner simply cannot rebut that presumption of correctness by clear and convincing evidence. The state courts' findings are based upon what a reasonable jury could have found the evidence to be.

28 U.S.C. § 2254(d)(1) & (2) (footnote added). Moreover, the Act, as amended, presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

17. In *Williams v. Taylor, supra*, the Supreme Court held that § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied— the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 412-413, 120 S.Ct. at 1523; *see Bottoson, supra*, 234 F.3d at 531 ("In addition, a state court

decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'").

18.    In this case, it is clear that the Alabama courts reached the merits of petitioner's remaining claims, that is, claims three and five through thirteen raised in the instant petition. (*Compare* Doc. 1, at 15-16 & 19-24 *with* Doc. 11, Exhibit C, at 2-7 & 9 *and* Doc. 11, Exhibit E, DENIAL OF RULE 32 PETITION, at 1-2) Middleton cannot establish his entitlement to relief under § 2254(d)(1) & (d)(2) with respect to any of these issues. In this regard the undersigned notes generally that petitioner has not and cannot show, under the "contrary to" clause, that the Alabama courts, arrived at any conclusions opposite to those reached by the Supreme Court of the United States on any question of law or decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts.  Moreover, as indicated above, under the "unreasonable application" clause, petitioner has not and cannot establish that the Alabama courts, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case.

19.    Middleton's ineffective assistance of trial and appellate counsel claims (Doc. 1, at 20-23) were discussed and rejected by the Circuit Court of Conecuh County, Alabama in

its decision on collateral review (Doc. 11, Exhibit E, DENIAL OF RULE 32 PETITION, at 1-2). While that court, in its decision, did not specifically cite to *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), it is clear from a reading of the decision that the court was well aware of the guiding principles set down by the Supreme Court in *Strickland v. Washington* in reaching its decision on petitioner's ineffective assistance of trial and appellate counsel claims. *Compare Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) ("Avoiding these pitfalls does not require citation to our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") *with* Doc. 11, Exhibit E, DENIAL OF RULE 32 PETITION, at 1-2 ("Petitioner claims that trial counsel should have moved to quash the indictment as a result of discrimination in the selection of [] Grand Jury Foremen. The evidence showed that approximately equal numbers of African-American[s] and Caucasians have served as Grand Jury Forepersons. Petitioner failed to prove any discrimination. [] Petitioner claims that trial counsel should have made a Batson motion. His counsel testified that such was considered but there were no tenable grounds to make the motion. The Court finds this testimony convincing. [] Petitioner claims that counsel failed to challenge the arrest. Petitioner failed to show the arrest was improper. [] Petitioner claims that counsel failed to challenge the indictment. The indictment is not void. [] Petitioner claims that trial counsel failed to object to the transcript of the defendant's

statement and the tape of it being placed into evidence before the jury. The use of the transcript and tape were done as a result of a plea agreement between the Defendant and the State regarding the testimony of the Petitioner against a co-defendant Eugene Dorsey. Counsel could not ethically have done otherwise and was not ineffective for carrying out the agreement as made. . . . Petitioner alleges that appellate counsel should have raised each of the deficiencies claimed above. As this court finds that none of the above claims have merit, appellate counsel was not ineffective for failing to raise them."). Petitioner cannot and has not shown that the Conecuh County Circuit Court unreasonably applied any relevant precedent with respect to his claims of ineffective assistance of counsel nor is it debatable among reasonable jurists that the result of which petitioner claims is incorrect. Stated differently, it is not debatable among reasonable jurists that the trial court's rejection of petitioner's ineffective assistance of trial and appellate counsel claims is inherently incorrect.

20.     The Conecuh County Circuit Court also rejected petitioner's claim of newly discovered evidence of innocence. Middleton actually couched this claim as an attack upon the prosecution's failure to divulge exculpatory evidence, petitioner claiming that two witnesses made statements to the prosecutor which would exculpate him and throw light on others as the actual culprits. Unsurprisingly, the trial court quickly discounted Middleton's argument in this regard by pointing to petitioner's Rule 32 testimony wherein he admitted that the statement offered into evidence at his trial was true. (Doc. 11, Exhibit E, DENIAL

OF RULE 32 PETITION, at 2) Middleton reiterated during this collateral hearing that during the course of the robbery of a store in Brooklyn, Alabama he shot and killed Richard Cary after Cary grabbed the gun and it discharged. Moreover, petitioner admitted that upon hearing his gun discharge, Eugene Dorsey killed Scott Williams and thirteen-year-old Timothy Bryan Crane and took money from the store register. Thus, as correctly determined by the trial court, petitioner has no basis to claim his innocence or argue that the prosecution withheld exculpatory evidence.[11]

21. The decision of the Alabama Court of Criminal Appeals discussed petitioner's sufficiency of the evidence and prejudicial publicity claims. (*Compare* Doc. 1, at 15-16 & 19 *with* Doc. 11, Exhibit C, at 5-7 & 9) The undersigned cannot find that the Alabama Court of Criminal Appeals' analysis of either of these claims on direct review was contrary to clearly established federal law or involved an unreasonable application of clearly established federal law. With respect to the first issue, although Alabama's intermediate appellate court did not

---

[11]    In order to establish a violation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Middleton must prove "(1) that the evidence was favorable to him because it was exculpatory or impeaching; (2) that the evidence was suppressed by the State, either willfully or inadvertently; and (3) that the evidence was material and, therefore, that the failure to disclose it was prejudicial." *Williamson v. Moore*, 221 F.3d 1177, 1183 (11th Cir. 2000) (citation omitted), *cert. denied*, 534 U.S. 903, 122 S.Ct. 234, 151 L.Ed.2d 168 (2001). As found by the trial court, in light of Middleton's Rule 32 hearing testimony, which underscored the statement admitted into evidence at trial, this Court cannot find either that the alleged evidence was exculpatory or material. Accordingly, the trial court correctly denied petitioner's claim in this regard.

specifically cite to the Supreme Court's holding in *Jackson v. Virginia*, *infra*,[12] its analysis of

Middleton's sufficiency-of-the-evidence claim(s) is in no manner contrary to that holding nor

was there any unreasonable application of that case. It is simply not debatable among

reasonable jurists that the result of which petitioner complains is incorrect.

22.     As for petitioner's prejudicial publicity claim,[13] he makes the base and

conclusory argument that the trial court should have granted his motion to control publicity

and that "[i]t is impossible to gauge with any degree of certainty the actual affect of the

denial of this motion." (Doc. 1, at 19) This very argument by Middleton, when combined

with his failure to provide this Court or the Alabama Court of Criminal Appeals with

evidence that the publicity prior to or during his trial was prejudicial, does nothing but

underscore the correctness of the appellate court's observations that there "is no evidence

that the appellant was prejudiced by any publicity[]" and that the trial court did not err in

---

[12]     Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The Alabama Court of Criminal Appeals discussed each section of capital murder with which petitioner was charged, the elements of those crimes, and how the evidence presented at trial established each essential element of those crimes. In light of the evidence presented at the trial of this cause, as set forth in the decision of the Alabama Court of Criminal Appeals, it is clear to the undersigned that any rational trier of fact could have found the essential elements of capital murder during a robbery, capital murder wherein two or more persons are murdered, and capital murder of a child less than fourteen years of age beyond a reasonable doubt.

[13]     "It is well established that prejudicial publicity may deprive a criminal defendant of the constitutional right to a fair trial." *Williams v. Griswald,* 743 F.2d 1533, 1537 (11th Cir.

denying the motion to control publicity given his failure to establish that "the jurors' impartiality would be destroyed by the news media[.]" (Doc. 11, Exhibit C, at 9)[14] Thus, the decision of the Alabama Court of Criminal Appeals in this regard was not contrary to clearly established federal law nor did it involve an unreasonable application of clearly established federal law.

### D. **Certificate of Appealability**.

23.     Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . .

---

1984).

[14]     In other words, Middleton did not adduce (or produce) evidence of inflammatory, prejudicial publicity that so pervaded or saturated the community as to render impossible a fair trial by an impartial jury drawn from Conecuh County such that jury prejudice can be presumed nor did he adduce or produce evidence establishing actual juror prejudice. *Williams, supra,* at

that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), and, in even larger measure, on the merits of underlying constitutional claims, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *id.*; *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'"); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Because Alabama courts routinely and consistently hold that "[r]eview on appeal is limited to review of questions properly and timely raised at trial[,]" *Newsome v. State*, 570 So.2d 703, 716 (Ala.Crim.App.

---

1537 n.5 & 1538-1541.

1989) (citations omitted) and Middleton has not established either cause or prejudice for his procedural default of claims one, two and four of the instant petition, the undersigned finds that a reasonable jurist could not conclude that this Court is in error for failing to reach the merits these claims, *see, e.g., Coleman v. Thompson, supra,* nor could a reasonable jurist conclude that petitioner should be allowed to proceed further with respect to these claims. *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Moreover, with respect to all other claims raised by petitioner the undersigned recommends that the Court find that reasonable jurists could not debate whether Middleton's § 2254 habeas petition should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

24.    Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g., Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth,*

2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## <u>CONCLUSION</u>

The Magistrate Judge finds, in part, that this Court is procedurally barred from reaching the merits of several of petitioner's claims and, with respect to the remaining claims, that petitioner's rights were not violated in this cause such that his request for habeas corpus relief should be denied. Middleton is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate

Judge.

     **DONE** this the 4th day of January, 2011.

                s/WILLIAM E. CASSADY
               **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[15]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).